# RICHARD C. KEILY.

*v.*

## THE BOARD OF SUPERVISORS OF SANGAMON COUNTY.

1. COUNTY TREASURERS—*of their commissions upon money raised and paid out by the county.*   In order to raise the sum of $200,000, with which to pay for the old State House in Springfield, the Board of Supervisors of Sangamon county appointed certain persons as a committee to negotiate the bonds of the county for that purpose, which was done, and the proceeds of the bonds were paid by that committee directly into the State treasury, never having passed into the hands of the country treasurer at all.   There was no law which directed this money, specifically, to be paid to the county treasurer, nor gave him a commission for receiving and paying it out, specifically: *Held,* the county treasurer was not entitled to any commission upon the money so raised and disbursed.

2. It was competent for the county authorities to appoint special agents to raise, receive and pay over to the State the special fund involved in the purchase of the old State House.

3. COUNTY TREASURER—*of his commissions as county collector.*   The county treasurer, in counties under township organization, is made the county collector, but when the county taxes are paid over to him by the town collectors, he receives them as treasurer, not as county collector, and is entitled to no commission on such moneys, as collector, but only such as is prescribed by law for the duty performed as treasurer.   The acts of 1853 and 1861, on that subject, construed.

APPEAL from the Circuit Court of Sangamon county; the Hon. BENJAMIN S. EDWARDS, Judge, presiding.

Messrs. ROBINSON, KNAPP & SHUTT, for the appellant.

Mr. C. M. MORRISON, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit brought by the appellees, against the appellant and his sureties on his bond, as treasurer of Sangamon county, and only two questions are presented in the case, in relation to two several claims for commissions.   The case was tried by the court below, a jury having been waived, upon an agreed statement of facts.

It was agreed between the parties, as follows :

" That, in order to raise the sum of $200,000, with which to pay for the old State House in said county, the board of supervisors of said county, on the 6th day of December, A. D. 1867, appointed A. B. McConnell, N. W. Matheny and said R. C. Keily, as a committee to raise the sum of $100,000 on the bonds of said county, to make one payment on said purchase ; that said committee raised said sum of $100,000, by negotiating the bonds of the county, and that they paid the said sum into the State treasury ; that afterward, on the 5th day of March, A. D. 1869, the said board appointed William M. Warren, Jacob J. Weber, members of said board, and N. W. Matheny, county clerk of said county, a special committee to raise the further sum of $100,000, to complete the payment of the purchase aforesaid ; that they did raise said sum by negotiating the bonds of said county, and paid the said sum into the State treasury."

" All this was done while said Keily was the legal and acting treasurer of said county, and willing to perform said services ; that said Keily, as treasurer, has retained and kept, of the ordinary county revenue, the sum of three per cent on both said sums—claiming to be entitled to retain the said sums as his commission, lawfully accruing to him thereon, and to recover which percentage this suit has been brought."

In support of this claim, the case of *Fell* v. *The Board of Supervisors of McLean County*, 43 Ill. 216, is referred to as an authority.

In that case, the board of supervisors of McLean county had assessed a special war fund tax, and made an order directing the township collectors to pay over this special tax when collected, directly to a disbursing agent whom they had appointed, which was done ; and this war tax never went into the hands of the county treasurer. That was a county tax ; the statute required, that the warrant to the town collectors should direct them to pay over the county tax collected by them, to the

county treasurer, and it gave to the county treasurer a commission of one per cent for receiving, and one per cent for paying out the county tax; and the court there held, that the board of supervisors had no legal power to direct the town collectors to pay that tax directly to the disbursing agent, and that it was constrained to say, that under the letter of the law the treasurer was entitled to two per cent commissions.

No such constraint is felt in this case; no law directed this money, specifically, to be paid to the county treasurer, nor gave him a commission for receiving and paying it out, specifically.

In the case of *The People* v. *Moon et al.*, 3 Scam. 123, it was decided by this court, that the sureties on the official bond of Moon, as treasurer of Putnam county, were not liable for the failure of Moon to account for money received by him while treasurer, being part of the sum of $200,000, appropriated by the "Act to establish and maintain a general system of internal improvement," approved February 27, 1837, to counties through which no railroad or canal was provided to be made, on the ground that Moon had received the money as the special agent of Putnam county, and not in his character as treasurer; he had signed his receipt for the money as agent for the county, and the decision was put upon the further ground that the money did not arise from the ordinary sources of revenue, and that it was only in reference to such moneys that the sureties contracted.

It was again held, in the case of *Kitchens et al.* v. *Greene County*, 4 Scam. 485, in reference to another portion of that same fund which the county of Greene was entitled to, that the county commissioners' court of that county might lawfully appoint an agent to keep and loan out the money.

We do not perceive why the appointment by the county authorities, of special agents to raise, receive, and pay over to the State the special fund involved in this case, was not equally lawful here, as in the last two cases cited. It is true, that the following provision of the statute was enacted subsequent to those decisions:

Section 4, article 15, township law, Gross' Stat. 3 ed. p. 759 : "That it shall be the duty of the county treasurer to receive all money belonging to the county, from whatever source derived."

But the following provision was then in force:

Section 10, chap. 28, Gross' Stat., p. 154 : "That no claim of any county for revenue, costs, &c., or from any other source whatever, shall be considered as having been paid  *  *  * until the money or other funds shall have been paid to the (county) treasurer, and his duplicate receipts had therefor," &c.

We do not think the first provision essentially affects the bearing of those decisions upon the present question, however it might be as to the liability of sureties, where such a special fund has actually been paid into the county treasury.

This money, then, not having been raised by taxation, nor derived from any ordinary source of county revenue, it never having come into the hands of the treasurer, and he never having performed any service nor incurred any responsibility in respect to it, we regard his claim of compensation, by way of commissions for receiving and paying out this money, as not well founded.

The other claim of the appellant, is one of $5,369.14, for commissions as county collector, on the county taxes of the county of Sangamon, collected by the various town collectors of said county, for the years 1867 and 1868, and paid over to the appellant, at the rate of one per cent for receiving, and one per cent for paying over the said taxes to the county treasury of said county.

It is agreed by the parties, that on such amounts whereon the appellant claims commissions as county collector, he, as county treasurer, received the following commissions : five per cent on the first $1,000, and three per cent on the residue.

The following statute provisions bear upon this claim, and are relied upon in support of it:

32—58TH ILL.

Sec. 72 of the act of February 12, 1853, provides that "Collectors shall be allowed a commission of five per cent on the first $8,000, and three per cent on all additional sums collected by them, to be paid by the State and county, in proportion to the amount of State and county tax collected by collectors." Laws 1853, p. 88, Gross' Stat., 3d ed. p. 610, sec. 203.

Said section 72 further provides, that " County treasurers shall be allowed a commission of one per cent on all moneys, county orders and jury certificates received by them for county purposes, and one per cent on all moneys paid out by them."

Section 10, article 15, of " an act to reduce the act to provide for township organization and the several acts amendatory thereof, into one act, and to amend the same," approved February 20, 1861, provides that, " The county collectors or treasurers, in counties adopting township organization, shall hereafter be allowed, in their settlements with the auditor, for receiving State tax from town collectors, and paying the same into the State treasury, adjusting the accounts of said town collectors, and correcting delinquent lists, a commission of two per cent when the amount received does not exceed $10,000, and one per cent on all sums received from town collectors over that amount, and shall be allowed one per cent for receiving the county and town tax, and one per cent for paying out the same." Gross' Stat., 3d ed. p. 759, sec. 10.

The county treasurer, in counties under township organization, is made the county collector, and as such, is required to give bond in addition to his bond as treasurer ; and it is claimed, that here there were two separate and distinct offices existing in the appellant, and that in receiving from the town collectors, and paying out these county taxes, the performance of the functions of both offices was involved, and a twofold commission should be allowed him—one, as county collector, for receiving the money in that capacity from the town collectors, and paying it out to himself as county treasurer, and another, as county treasurer, for receiving it in that capacity from himself as county collector, and paying it out as treasurer.

We deem such a claim to be entirely unwarranted.

Section 10 above, of the act of 1861, seems to regulate the whole subject of the county treasurer's compensation for receiving from the town collectors, and paying out both State and county taxes; and provides, in plain words, that he shall be allowed one per cent for receiving the county and town tax, and one per cent for paying out the same.

As we regard it, the county treasurer receives the county taxes from the town collectors, and the county collector does not collect them from the town collectors. The warrant to the town collector, the statute provides, shall direct him to pay over to the county treasurer the State and county tax collected by him.

The work of collecting the county taxes, which are paid over by the town collectors to the county treasurer, is done by the town collectors, and the treasurer but receives them after they have been collected. The county collector has nothing to do with them. The taxes which he collects, are on the property returned to him as delinquent by the town collectors.

We think the appellant is not entitled to any more commissions in respect to these county taxes, than he has already received.

The court below disallowed both these claims for commissions, and its judgment is affirmed

*Judgment affirmed.*